By the Court.—Clerke, J.
I. From the principle of the common law, which regards the husband and wife as one person, it has been always held that the legal existence of the latter was suspended during the marriage, and, consequently,, that all her personal property was vested in. the husband. He could not make any gift to her, except through the intervention of a trustee; and even her necessary apparel and jewels (her paraphernalia) he could dispose of absolutely, during his *222 life time (Graham v. Londonderry, 3 Atk., 394). Even after his death they were liable to his debts, if his personal estate should be exhausted ; although he could not dispose of them by will, and, if the personal estate should be sufficient to pay his debts, she becomes entitled to them at his death.
Does this rule of the common law remain unchanged among us?
The act of 1848 merely provided that the property of any woman, who should thereafter marry, should not be subject to the disposal of her husband, or liable for his debts, and that the property of any woman then married should be likewise exempted from the disposal of the husband, except so far as it may be liable for his debts theretofore contracted. In both cases, it was declared that her property should be 'sole and separate, like that of a single woman; with the exception just mentioned. The act of 1849, extended this privilege, by providing that any married woman may take by inheritance, gift, grant, devise, or bequest from any person, other than her husband, and hold to her sole and separate use, and dispose of the property thus obtained, in the same manner and to the like effect as an unmarried woman could dispose of the property, and it was to be free from the disposal of her husband, and from liability for his debts. The act of 1860 (Laws of 1860, p. 151), still further extends the privileges of married women ; and in the 1th section it allows a married woman to sue and be sued in the same manner as a single woman, in all matters relating to her property, which she then possessed, or which may thereafter come to her by descent, devise, bequest, or the gift of any person, except her husband. We see that these several acts were all progressive, each successively increasing the privileges of married women with regard to property ; but they contain nothing which warrants the supposition that a husband could make any gift to his wife, that he could not have made previous to 1848. The act of 1862 (Laws of 1862, p. 343), which is chiefly amendatory, amends the 1th section, to which I have referred, of the act of 1860, by omitting the words “ except her husband ” after the word “ person so that she may sue and be sued in all matters having relation to any property obtained from her husband, as well as *223 from any other person. When we consider the spirit by which this legislation was set in motion, and the progressive character of these several enactments, I think that we may safely infer that the legislature intended, by the act of 1862,-to repeal the rule of the common law, that a gift from a husband to a wife could not invest the property in her. This rule, indeed, is not repealed by express words ; but the 7th section of the act of 1860, as amended by that of 1862, is inconsistent with it, and the common law rule may therefore be considered as impliedly repealed.
As a married woman can maintain an action in relation to property obtained from her husband, as well as from all other persons, the denial of her sole and separate right to that property as donee would be' inconsistent with her right to sue for it. At all events, 'she has plainly the right to maintain an action for any property which has been given to her by her husband, whatever claim he or his creditors may have to it," after it shall be recovered. I hold, therefore, that the plaintiff can maintain this action for the loss of that portion of her apparel and jewelry which was the gift of her husband, as well as for that which was the gift of her son.
II. Are the defendants liable as common carriers, notwithstanding the notice on some of the series of tickets, which she purchased at the beginning of her journey on the defendants’ road?
Railroad companies, as we all know, are subject to the same responsibility, which the law has always imposed on common carriers, and are, therefore, insurers of the safe conveyance of goods entrusted to them for transportation, except against accidents which no human prudence can avoid or control. How far can they limit this responsibility ? This question can be answered without difficulty ; for no rule is more distinctly settled in this State, than that they may do so by positive contract ;—the owner of the goods, or the passenger, voluntarily, and for a,valuable consideration, waiving his right to indemnity ; but, they cannot do so by any notice placed on a ticket, or elsewhere, even where such notice is brought to the knowledge of those whose persons or whose property they undertake to carry. It is only necessary to refer to one of the many *224 recent authorities on this subject (Bissell v. The N. Y. Central R. R. Co., 25 N. Y., 442).
In the case before us there was no such contract, nor was there any notice on the ticket, to be used on the defendants’ road. On the tickets which she bought with the other tickets from the defendants’ agent, but which were to be used on the N. Y. Central R. R., from Easton to Eew York, and which were issued by that company, there was a notice limiting the liability to one hundred dollars, unless extra fare should be paid. So that there is not the slightest doubt that the common law liability of the defendants remains in full force. -It is consequently unnecessary to consider whether the defendants were guilty of negligence ; for as we have seen, whether guilty or not of negligence, they are liable as common carriers.
III. To what extent are they liable ? This was a question solely for the jury ; and it was explicitly submitted to them. The kind and quantity of the materials constituting the baggage of a traveller must depend upon his tastes .and habits, his pecuniary circumstances, his position in s ociety, and, we may add, the conveniences and necessities of the particular journey. This, of course, can be ascertained only from testimony taken before the jury, and submitted to them. They have decided that the apparel and jewelry contained in the plaintiff’s trunks, which were lost, were necessary for her on her journey ; and their verdict cannot be disturbed.
The judgment should be affirmed, with costs.